**THE ATKIN FIRM, LLC**
Formed in the State of New Jersey
By:   John C. Atkin, Esq.
55 Madison Avenue, Ste. 400
Morristown, NJ 07960
Tel.: (973) 314-8010 / Fax: (833) 693-1201
JAtkin@atkinfirm.com
*Attorneys for Plaintiff Strike 3 Holdings, LLC*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>WENTAO HE,<br><br>　　　　　　Defendant. | Case No. 2:24-cv-10059-MCA-JRA<br><br>**FIRST AMENDED COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), a Delaware limited liability company with its principal place of business located at 2140 S. Dupont Highway, Camden, Delaware 19934, brings this First Amended Complaint against Defendant Wentao He (f/k/a John Doe subscriber assigned IP address 108.53.113.192) ("Defendant"), and alleges as follows:

### Introduction

1.　This is a case about the ongoing and wholesale copyright infringement of Plaintiff's motion pictures by Defendant.

1

2. Plaintiff is the owner of award-winning, critically acclaimed adult motion pictures.

3. Strike 3's motion pictures are distributed through the *Blacked*, *Blacked Raw, Deeper*, *Milfy*, *Slayed*, *Tushy*, *Tushy Raw,* and *Vixen* adult websites and DVDs. With millions of unique visitors to its websites each month, the brands are famous for redefining adult content, creating high-end, artistic, and performer-inspiring motion pictures produced with a Hollywood style budget and quality.

4. Defendant is, in a word, stealing these works on a grand scale. Using the BitTorrent protocol, Defendant is committing rampant and wholesale copyright infringement by downloading Strike 3's motion pictures as well as distributing them to others. Defendant did not infringe just one or two of Strike 3's motion pictures, but has been recorded infringing 27 movies over an extended period of time.

5. Although Defendant attempted to hide this theft by infringing Plaintiff's content anonymously, this court's order permitted Plaintiff to serve a subpoena on Defendant's Internet Service Provider ("ISP"), Verizon Online LLC (a/k/a Verizon Fios) ("Verizon"), to discover the identity of the subscriber assigned IP address 108.53.113.192, the IP address Defendant used to download and share Plaintiff's works.

6. Based on Plaintiff's investigation of the subscriber and publicly available resources, Plaintiff identified Defendant as the true infringer.

7. This is a civil action seeking damages under the United States Copyright Act of 1976, *as amended*, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

## Jurisdiction and Venue

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (jurisdiction over copyright actions).

9. This Court has personal jurisdiction over Defendant because Defendant used an Internet Protocol address ("IP address") traced to a physical address located within this District to commit copyright infringement. Therefore: (i) Defendant committed the tortious conduct alleged in this First Amended Complaint in the State of New Jersey; (ii) Defendant resides in the State of New Jersey, and/or; (iii) Defendant has engaged in substantial – and not isolated – business activity in the State of New Jersey.

10. Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this District because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District and the State of New Jersey; and, (ii) the Defendant resides (and therefore can be found) in this District and the State of New Jersey. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant resides or may be found in this District and the State of New Jersey.

## Parties

11.    Plaintiff Strike 3 Holdings, LLC, is a Delaware limited liability company located at 2140 S. Dupont Highway, Camden, DE 19934.

12.    Defendant Wentao He is an individual who currently resides at 4 Vermella Way, Apt. 117, Union, NJ 07083.

## Factual Background

### *Plaintiff's Award-Winning Copyrights*

13.    Strike 3's subscription-based websites proudly boast a paid subscriber base that is one of the highest of any adult-content sites in the world. Strike 3 also licenses its motion pictures to popular broadcasters and Strike 3's motion pictures are the number one selling adult DVDs in the United States.

14.    Strike 3's motion pictures and websites have won numerous awards, such as "best cinematography," "best new studio," and "adult site of the year."

15.    Strike 3's motion pictures have had positive global impact, leading more adult studios to invest in better content, higher pay for performers, and to treat each performer with respect and like an artist.

16.    Unfortunately, Strike 3, like a large number of other makers of motion picture and television works, has a major problem with Internet piracy. Often appearing among the most infringed popular entertainment content on torrent websites, Strike 3's motion pictures are among the most pirated content in the world.

4

### *Defendant Used the BitTorrent File Distribution Network to Infringe Plaintiff's Copyrights*

17. BitTorrent is a system designed to quickly distribute large files over the Internet. Instead of downloading a file, such as a movie, from a single source, BitTorrent users are able to connect to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the file from and to other users.

18. BitTorrent's popularity stems from the ability of users to directly interact with each other to distribute a large file without creating a heavy load on any individual source computer and/or network. It enables Plaintiff's motion pictures, which are often filmed in state of the art 4kHD, to be transferred quickly and efficiently.

19. To share a movie within the BitTorrent network, a user first uses BitTorrent software to create a .torrent file from the original digital media file. This process breaks the original digital media file down into numerous pieces.

20. The entire movie file being shared has a hash value (*i.e.*, the "File Hash"). A hash value is an alpha-numeric value of a fixed length that uniquely identifies data.

21. Hash values are not arbitrarily assigned to data merely for identification purposes, but rather are the product of a cryptographic algorithm applied to the data itself. As such, while two identical sets of data will produce the same cryptographic

5

hash value, any change to the underlying data – no matter how small – will change the cryptographic hash value that correlates to it.

22. To find and re-assemble the pieces of the digital media file, *i.e.*, to download the file using BitTorrent, a user must obtain the .torrent file for the specific file that has been broken down into pieces.

23. Each .torrent file contains important metadata with respect to the pieces of the file. When this data is put into the cryptographic algorithm, it results in a hash value called the "Info Hash."

24. The "Info Hash" is the data that the BitTorrent protocol uses to identify and locate the other pieces of the desired file (in this case, the desired file is the respective file for the infringing motion pictures that are the subject of this action) across the BitTorrent network.

25. Using the Info Hash in the metadata of a .torrent file, a user may collect all the pieces of the digital media file that correlates with the specific .torrent file.

26. Once a user downloads all of the pieces of that digital media file from other BitTorrent users, the digital media file is automatically reassembled into its original form, ready for playing.

27. Plaintiff has developed, owns, and operates an infringement detection system, named "VXN Scan."

28. Using VXN Scan, Plaintiff discovered that Defendant used the

BitTorrent file network to illegally download and distribute Plaintiff's copyrighted motion pictures.

29. To explain, while Defendant was using the BitTorrent file distribution network, VXN Scan established direct TCP/IP connections with Defendant's IP address.

30. VXN Scan downloaded from Defendant one or more pieces of numerous digital media files.

31. Plaintiff identified these pieces as portions of infringing copies of Strike 3's motion pictures.

32. To explain, the VXN Scan system first searched for and obtained .torrent files claiming to be infringing copies of Plaintiff's works, and then downloaded complete copies of the digital media files that correlate to those .torrent files.

33. Plaintiff then compared the completed digital media files to Plaintiff's copyrighted works to determine whether they are infringing copies of one of Plaintiff's copyrighted works.

34. The digital media files have been verified to contain a digital copy of a motion picture that is identical (or, alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted Works.

35. VXN Scan then used the "Info Hash" value, contained within the

metadata of the .torrent file correlated with a digital media file that was determined to be identical (or substantially similar) to a copyrighted work, to download a piece (or pieces) of the same digital media file from Defendant using the BitTorrent network.

36. At no point did VXN Scan upload content to any BitTorrent user. Indeed, it is incapable of doing so.

37. The VXN Scan captured transactions from Defendant sharing specific pieces of 27 digital media files that have been determined to be identical (or substantially similar) to a copyrighted work(s) that Plaintiff owns.

38. VXN Scan recorded each transaction in a PCAP file.

39. VXN Scan recorded multiple transactions in this matter.

40. For each work infringed a single transaction is listed on Exhibit A.

41. For each transaction listed, Exhibit A sets forth the Universal Time Coordinated (UTC) time and date of each transaction, along with (1) the Info Hash value obtained from the metadata of the corresponding .torrent file that formed the basis of the VXN Scan's request for data, and (2) the File Hash value of the digital media file itself.

42. Exhibit A also sets forth relevant copyright information for each work at issue: the date of publication, the date of registration, and the work's copyright registration number. In a showing of good faith, Plaintiff has intentionally omitted

the title of the work from this public filing due to the adult nature of its content, but can provide a version of Exhibit A containing the works' titles to the Court or any party upon request.

43. Thus, Defendant downloaded, copied, and distributed Plaintiff's Works without authorization.

44. Defendant's infringement was continuous and ongoing.

45. Plaintiff owns the copyrights to the Works and the Works have been registered with the United States Copyright Office.

46. Plaintiff seeks statutory damages, attorneys' fees, and costs under 17 U.S.C. § 501 of the United States Copyright Act.

### *Discovery Will Show that Defendant is the Individual Who Infringed Plaintiff's Copyrighted Works*

47. Plaintiff's investigation has determined that Defendant is the person who used IP address 108.53.113.192 to infringe on its copyrighted works.

48. Plaintiff utilized the Maxmind geolocation service to determine the ISP that assigned IP address 108.53.113.192 (to determine the correct ISP to whom a subpoena can be sent) and the approximate geographic location of the subscriber of that IP address (to determine the proper venue in which to file an action).

49. Maxmind reported that IP address 108.53.113.192 was assigned by Verizon to a subscriber approximately located in Union, New Jersey.

50. After the Court granted Plaintiff's request to conduct limited expedited

discovery, Plaintiff served the court-authorized subpoena on Verizon on November 14, 2024.

51. On November 18, 2024, Verizon confirmed receipt of the subpoena.

52. Upon information and belief, Verizon subsequently provided notice of the subpoena (and this lawsuit) to the subscriber in compliance with the Cable Communications Policy Act of 1984 ("CCPA"), 47 U.S.C. § 551 *et seq*.

53. Verizon responded to the subpoena and identified Defendant as the subscriber to whom the ISP had assigned the IP address to during at least one date of infringement and provided the address identified in paragraph 12.

54. After receiving Verizon's response to the subpoena, Plaintiff reviewed publicly available information for the subscriber and any individuals who, upon information and belief, may have resided in the residence (and therefore had sufficient access to the IP address during the period of infringement).

55. Upon information and belief, Defendant lived at the residence identified in paragraph 12 above during the period of infringement.

56. Upon information and belief, the only other occupant of the residence identified in paragraph 12 during the period of infringement was Defendant's wife.

57. During the period of infringement recorded by VXN Scan, a single BitTorrent client, called qBittorrent, was observed being used to download and distribute files through IP address 108.53.113.192.

58. The use of a single BitTorrent client indicates that only one (1) individual is using IP address 108.53.113.192 to download and distribute works using the BitTorrent protocol.

59. Plaintiff also logged BitTorrent network activity emanating from IP address 108.53.113.192 involving works other than Plaintiff's 27 copyrighted works during the period of infringement. Collectively, this evidence is referred to as the "Additional Evidence."

60. Plaintiff's Additional Evidence indicates that IP address 108.53.113.192 was used to download and distribute files relating to other adult movies and mainstream media (*i.e.*, movies, music, books, software, TV shows, and other works) using the BitTorrent protocol during the period of infringement.

61. This consistent and prolonged history of BitTorrent activity indicates that the infringer is unlikely to be a houseguest or infrequent visitor.

62. Publicly available records indicate strong matches between the BitTorrent activity identified in Plaintiff's Additional Evidence and Defendant.

63. Defendant's publicly available social media indicates that he has advanced degrees in mechanical engineering and artificial intelligence.

64. Defendant's publicly available social media indicates that he is employed as a data engineer at an American multinational technology conglomerate.

65. Defendant's publicly available social media indicates that he is skilled

in Google Kubernetes Engine, SolidWorks, Python, and MATLAB.

66. Plaintiff's Additional Evidence lists files related to Defendant's profession and skills, including, but not limited to:

a. *[ FreeCourseWeb.com ] Oreilly - Kubernetes Made Simple.zip*;

b. *[ FreeCourseWeb.com ] Google Tricks And Tips - 10th Edition, 2022*;

c. *[ DevCourseWeb.com ] Udemy - ChatGPT Prompt Engineering - Build 10 GPT's for the GPT Store*;

d. *SolidWorks 2018 SP0 Premium Windows x64*;

e. *SolidWorks 2018 SP2 x64 --- With SN and activator*;

f. *python-3.7.0 64bit*;

g. *MATLAB R2017b [PC] [x64] with Serial*.

67. Defendant's technical background indicates that it is unlikely that he has removed any factory-set password protection from the router he used to engage in this infringement.

68. Defendant's technical background indicates that it is unlikely that he did not institute password protections on the router he used to engage in this infringement if they were not present by default.

69. Upon information and belief, the router Defendant used to engage in this infringement was password-protected throughout the period of infringement.

12

## COUNT I
### Direct Copyright Infringement

70. The allegations contained in paragraphs 1–69 are hereby re-alleged as if fully set forth herein.

71. Plaintiff is the owner of the Works, which are each an original work of authorship.

72. Defendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol.

73. At no point in time did Plaintiff authorize, permit, or consent to Defendant's distribution of its Works, expressly or otherwise.

74. As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A) Reproduce its Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B) Distribute copies of the Works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C) Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Works' images in any sequence and/or by making the sounds accompanying the Works' audible and transmitting said performance of the work, by means of a device or process, to members of the public capable of receiving

the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publicly" perform); and

(D) Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works non-sequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

75. Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**WHEREFORE,** Plaintiff respectfully requests that the Court:

(A) Permanently enjoin Defendant from continuing to infringe Plaintiff's copyrighted Works;

(B) Order that Defendant delete and permanently remove the digital media files relating to Plaintiff's Works from each of the computers under Defendant's possession, custody, or control;

(C) Order that Defendant delete and permanently remove the infringing copies of the Works Defendant has on computers under Defendant's possession, custody, or control;

(D) Award Plaintiff statutory damages per infringed work pursuant to 17 U.S.C. § 504(a) and (c);

(E)    Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

(F)    Award Plaintiff prejudgment and post-judgment interest at the applicable rate; and

(G)    Grant such other and further relief as this Court may deem appropriate under law and equity.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: March 5, 2025                Respectfully submitted,

*/s/ John C. Atkin, Esq.*
JOHN C. ATKIN

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I, John C. Atkin, certify under penalty of perjury that the matter in controversy is not the subject of any other action or proceeding pending in any other court or any pending arbitration or administrative proceeding.

DATED: March 5, 2025                */s/ John C. Atkin, Esq.*
JOHN C. ATKIN

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

I hereby certify that the damages recoverable in this action by Plaintiff exceeds the sum of $150,000, exclusive of interest, costs, and punitive damages.

DATED: March 5, 2025                */s/ John C. Atkin, Esq.*
JOHN C. ATKIN