# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | Civil Case No. 2:24-cv-10059-MCA-JRA |
| Plaintiff, | |
| | Hon. Madeline Cox Arleo, U.S.D.J. |
| v. | Hon. José R. Almonte, U.S.M.J. |
| WENTAO HE, | **JOINT PROPOSED DISCOVERY PLAN** |
| Defendant. | |

1. Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

| Plaintiff | Defendant |
|---|---|
| John C. Atkin, Esq. | Kattina V. Barsik, Esq. |
| The Atkin Firm, LLC | Barsick Law Offices |
| 55 Madison Ave., Ste. 400 | 8 Campus Drive, Suite 105 |
| Morristown, NJ 07960 | Parsippany, NJ 07054 |
| Tel: (973) 314-8010 | Tel.: (973) 382-9166 |
| Fax: (833) 693-1201 | kattina@barsiklaw.com |
| JAtkin@AtkinFirm.com | |

2. Set forth a factual description of the case. Include the causes of action and affirmative defenses asserted.

   (a) Plaintiff: This is an Internet piracy case. Plaintiff recorded that an individual using IP address 108.53.113.192 downloaded and distributed at least 27 of Plaintiff's copyrighted movies using the BitTorrent protocol. After identifying the subscriber assigned this IP address pursuant to a court-authorized subpoena, Plaintiff determined that, based on publicly available information and third-party works distributed by the individual using IP address 108.53.113.192, the infringer is Defendant.

   Plaintiff intends to show that (1) it owns valid copyrights in each of the works, which were registered with the Copyright Office at the time suit was filed, and (2) that Defendant willfully infringed upon those copyrights by (a) downloading and (b) distributing those works to other individuals, without authorization, using the BitTorrent protocol. 17 U.S.C. §§ 106(1), (3), 501.  Plaintiff seeks injunctive relief (17 U.S.C. § 503), statutory damages (17 U.S.C. § 504(a) and (c)), and its attorneys' fees and costs (17 U.S.C. § 505).

1

(b) Defendant: Strike 3 Holdings, LLC filed a copyright infringement lawsuit against Mr. Wentao He in federal court in New Jersey, alleging that He used BitTorrent file-sharing   technology to illegally download and distribute the plaintiff's copyrighted adult films.       The plaintiff claims to have identified He through his IP address and alleges he engaged          in willful copyright infringement of their works. Strike 3 is seeking monetary damages   under the Copyright Act and injunctive relief.

Defendant He categorically denies the allegations, asserting he did not download, share,  or infringe any copyrighted works. Through his attorney, He argues that merely being an IP address subscriber is insufficient to establish copyright infringement liability. He denies having the technical background or engaging in any volitional conduct that would constitute direct copyright infringement, and challenges the reliability of the plaintiff's identification methods.

Defendant He raises 23 affirmative defenses, with the most significant being: (1) failure  to state a valid legal claim since IP address identification alone is insufficient for infringement; (2) lack of volitional conduct required for direct copyright infringement;(3) unreliable identification methods that cannot accurately link him to alleged infringing activity; (4) unclean hands, arguing Strike 3 engages in mass litigation tactics resembling extortion; and (5) copyright misuse, claiming the plaintiff uses litigation to extract settlements rather than protect legitimate copyright interests. Additional defenses include  statute of limitations, innocent infringement, and constitutional challenges to excessive statutory damages.

3.  Have settlement discussions taken place:  Yes _____  No___X_____

4.  The parties **have** met pursuant to Fed. R. Civ. P. 26(f).

5.  The parties **have** exchanged the information required by Fed .R. Civ. P. 26(a)(1). If not, state the reasons therefor.

6.  Explain any problems in connection with completing the disclosures required by Fed. R. Civ. P. 26(a)(1).

**Plaintiff**: Defendant's August 4, 2025 disclosures identified 23 individuals (not including himself), along with a catch-all category of unknown maintenance and household workers, but did not disclose "the subjects" of the information these people possess.  Defendant also attempted to identify several computer devices, but did not sufficiently identify them to enable forensic imaging by an ESI vendor. On August 5, 2025, Plaintiff provided Defendant with a deficiency letter designed to narrow the issues for discovery. On August 12, 2025, Defendant responded to Plaintiff with new disclosures that Plaintiff is reviewing as of the date of this report.

Also on August 12, 2025, Defendant sent Plaintiff an argumentative deficiency letter that appears to be generated by Artificial Intelligence ("AI"), which contains what appears to be a "hallucinated" or "fake" case and makes several demands that appear to exceed the scope of disclosures required Rule 26(a)(1).[1] As of the date of this report, Plaintiff is reviewing Defendant's August 12, 2025 deficiency letter regarding Plaintiff's June 16, 2025 initial disclosures to determine an appropriate response.

**Defendant**: The primary obstacle to completing meaningful initial disclosures stems from Plaintiff's failure to provide adequate foundational evidence to establish the scope and relevance of discovery. Specifically, inadequate forensic foundation from Plaintiff-Plaintiff's provided only correlation data (hash values and timestamps) without the fundamental forensic evidence necessary to establish infringement, particularly, packet capture (PCAP) files demonstrating actual file transfer activity, network layer evidence such as TCP/IP headers, handshake records, or peer IP lists, chain-of-custody documentation for the detection methodology, and validation records excluding false positives or spoofed connections. Without this foundational evidence, Defendant cannot reasonably assess what information is relevant or proportionate to disclose. Secondly, there is a lack of technical methodology transparency. Plaintiff references proprietary detection systems ("VXN Scan" and "CRT") but has failed to disclose: peer detection methodology and handshake verification processes, error rate metrics and validation datasets, independent audit results or academic verification, or statistical analysis of false positive rates. This prevents Defendant from understanding what technical information would be genuinely relevant to the claims.

Defendant has already disclosed material alternative explanations for the alleged activity, specifically, the router operated with default credentials during the relevant period, no access restrictions or guest network isolation was implemented, multiple unknown devices had potential network access and no specialized network monitoring or logging was in place. These conditions render specific device attribution technically unreliable, yet Plaintiff's discovery demands ignore these disclosed limitations.

Defendant's August 12, 2025 updated initial disclosures specifically identify the subject matter of each individual's knowledge including their access level, time periods of access or knowledge and specific technical knowledge regarding network configuration, devices and remote access sessions. This level of detail exceeds typical Rule 26(a)(1) requirements and provides Plaintiff with sufficient information to assess relevance.

---

[1] AI-generation also appears to be an issue in Defendant's Answer, which mis-numbered paragraphs when responding to the First Amended Complaint and included several quotations that do not appear to be present in the cases cited.

Regarding device identification for forensic imaging, the Plaintiff has not established that device imaging is necessary or proportionate given the lack of foundational forensic evidence. Privacy and cybersecurity concerns justify withholding detailed device identifiers until Plaintiff demonstrates adequate forensic foundation. Requiring comprehensive device disclosure before Plaintiff proves its detection methodology is inappropriate.

Regarding the citation error and "AI-Generated" allegation. Defendant acknowledges that the citation to Strike 3 Holdings, LLC v. Doe, No. 20-cv-308 (E.D. Pa. Nov. 13, 2020) in Defendant's August 12, 2025 correspondence contained an inaccurate case number. Defendant hereby corrects this citation error and reaffirms that the substantive legal principle remains well established: as courts have consistently recognized in BitTorrent litigation, hash values alone, without supporting packet capture data and forensic verification, are insufficient to prove copyright infringement in peer-to-peer file sharing cases. Regardless of any technical drafting assistance or citation error, the legal arguments raised are substantive, well founded in established copyright law, and directly responsive to the evidentiary deficiencies in Plaintiff's case. Rather than addressing these substantive evidentiary deficiencies, Plaintiff focuses on a citation error while avoiding the fundamental question of whether its detection methodology meets admissibility standards under Daubert and Rule 702.

Discovery should be sequenced to address Plaintiff's foundational evidence first before requiring comprehensive technical disclosures from Defendant. This ensures proportionality under Rule 26 (b)(1), prevents improper burden shifting, addresses legitimate cybersecurity and privacy concerns and allows both parties to assess the actual scope of relevant evidence.

7. The parties **have not** filed disclosures for third-party litigation funding. See L. Civ. R. 7.1.1.

No disclosure statements are required where third-party funding does not exist. *See* Notice to the Bar re: Clarification of L. Civ. R. 7.1.1. Third-party Litigation Funding (July 29, 2021).

**Plaintiff**: No person or entity that is not a party is providing funding for some or all of the attorneys' fees and expenses for the litigation on a non-recourse basis in exchange for (1) a contingent financial interest based upon the results of the litigation or (2) a non-monetary result that is not in the nature of a personal or bank loan, or insurance.

**Defendant**: No person or entity that is not a party is providing funding for some or all of the attorneys' fees and expenses for the litigation on a non-recourse basis in exchange for (1) a contingent financial interest based upon the results of the litigation or (2) a non-monetary result that is not in the nature of a personal or bank loan, or insurance

8. The parties **have** conducted discovery other than the above disclosures.  If so, describe.

        Plaintiff served a court-authorized subpoena on Defendant's ISP on November 14, 2024.

9. Proposed joint discovery plan:

    (a) Discovery is needed on the following subjects:

        **Plaintiff**: Plaintiff intends to seek discovery with respect to all allegations contained in the First Amended Complaint and any amendments thereto, and into Defendant's Answer and Affirmative Defenses listed therein.  In addition to the initial disclosures, Plaintiff intends to take Defendant's deposition, the deposition of persons identified in Defendant's disclosures and discovery responses, and (if Defendant alleges an open-Wi-Fi defense) Defendant's neighbors and their respective Internet Service Providers. Plaintiff also intends to conduct discovery on all computer devices used within Defendant's residence during the period of infringement and/or the circumstances that led to those devices no longer being in Defendant's possession/control. Plaintiff also intends to conduct discovery relating to Defendant's router and all computer devices that connected to Defendant's router, including router logs, during the period of infringement.

        Plaintiff also intends to conduct discovery from Defendant's educational institutions regarding his degrees and technical expertise because Defendant denied allegations regarding the degrees and technical expertise that he possesses in his Answer.  However, if Defendant stipulates to the degrees and technical experience that he possesses, this discovery may be unnecessary.

        Plaintiff also intends to conduct discovery from Defendant's employer, Meta, regarding Defendant's technical expertise and whether the infringement was conducted at the direction of, or for the benefit of, Meta.[2]

        **Defendant**: Defendant intends to take depositions of Plaintiff's technical personnel responsible for operating, maintaining and validating the VXN Scan and CRT detection systems,  including but not limited to personnel at Maverickeye UG and any other third-party vendors or contractors involved in the detection process.  Defendant also intends to conduct discovery regarding complete packet capture (PCAP) files and raw network-layer

---

[2] On July 23, 2025, Plaintiff filed a lawsuit against Meta Platforms, Inc., in the U.S. District Court for the Northern District of California, Dkt. No. 25-6213, alleging that Meta has, among other things, used its employee's residential IP addresses to download and distribute Plaintiff's copyrighted works, using the BitTorrent protocol, to train its AI models.

evidence including TCP/IP headers, handshake records, peer IP lists, and payload segments, technical specifications, validation datasets, error rate metrics, and reliability testing for the VXN Scan and CRT systems, peer detection methodology, handshake verification processes, and IP correlation logic spoofed connections, independent audit results and academic verification of detection system accuracy, any internal protocols used to rule out false positives, spoofed connections, or erroneous correlations.

Defendant intends to conduct discovery from any experts Plaintiff expects to rely upon concerning technical methodology, including their qualifications, the basis for their opinions, and any testing or analysis performed in connection with this case.  Defendant also intends to take depositions of such experts and conduct discovery regarding their compensation, prior testimony in similar cases, and methodology validation.

Defendant intends to conduct discovery regarding Plaintiff's failure to issue DMCA take down notices to Verizon concerning the allegedly infringing activity, including: Plaintiff's standard practices for DMCA notice issuance, any notices sent to internet service providers regarding the IP address assigned to Defendant during the alleged infringement period, Plaintiff's enforcement priorities and decision-making processes for pursuing litigation versus statutory remedies

Defendant intends to conduct discovery regarding Plaintiff's investigation of alternative explanations for the alleged activity, including: analysis of the network security conditions disclosed by Defendant (default router credentials, absence of access controls, unknown devices), any evidence demonstrating that alleged activity could not have originated from third-party access to Defendant's network, Plaintiff's methodology for distinguishing between subscriber-level activity and third-party access.

Defendant intends to conduct discovery regarding Plaintiff's litigation practices, including: the number of cases filed by Plaintiff in the past five years and their resolution, settlement rates, average settlement amounts, and standard settlement terms, any analysis of defendant's ability to pay settlements, communication templates and settlement demand practices, and any coordination with other copyright enforcement entities.

Defendant intends to conduct discovery regarding Plaintiff's damages calculations and financial impact claims, including: actual damages suffered as a result of the alleged infringement, revenue attribution methodology for individual alleged downloads, market harm analysis and loss calculations, and any evidence of ongoing commercial harm from the alleged activity.

Given Plaintiff's inadequate foundational evidence and technical deficiencies in Plaintiff's detection methodology, Defendant reserves the right to seek discovery regarding: the costs and resources Plaintiff has invested in detection and litigation versus actual damages suffered, the reliability and scientific validity of Plaintiff's evidence gathering methods, and any quality control measures or accuracy validation performed on detection systems.

Defendant proposes that discovery be sequenced so that Plaintiff's technical methodology and forensic evidence are addressed first, as this foundational information is necessary to determine the relevance and scope of any device level discovery from Defendant. Defendant objects to providing detailed device level discovery until Plaintiff has established the adequacy and reliability of its detection methodology and provided the packet level evidence necessary to support its claims.

Defendant reserves the right to supplement these discovery intentions as additional information becomes available through Plaintiff's responses to the deficiencies identified in Defendant's August 12, 2025, correspondence.

(b) Discovery **should not** be conducted in phases or be limited to particular issues.

Explain: Fact and expert discovery will be closely inter-related in this matter and should proceed at the same time.

(c) Proposed schedule:

(1) Fed. R. Civ. P. 26 Disclosures <u>Already produced</u>.

(2) E-Discovery conference pursuant to L. Civ. R. 26.1(d) <u>TBD</u>.

(3) Service of initial written discovery <u>September 22, 2025</u>.

(4) Maximum of <u>  25  </u> Interrogatories by each party to each other party.

(5) Maximum of <u>  10  </u> depositions to be taken by each party.

(6) Motions to amend or to add parties to be filed by <u>60 days prior to the end of Discovery</u>.

(7) Factual discovery to be completed by <u>June 29, 2026</u>.

(8) Plaintiff's expert report due on <u>February 19, 2026</u>.

(9) Defendant's expert report due on <u>February 19, 2026</u>.

(10) Rebuttal expert reports due on <u>April 20, 2026</u>.

(11) Expert depositions to be completed <u>by the end of Discovery</u>.

(12) Dispositive motions to be served within <u>60</u> days of completion of discovery.

(d)  Set forth any special discovery mechanism or procedure requested.

ESI is inherently ephemeral and easily destructible. Plaintiff will likely seek an order compelling that Defendant (1) identify all relevant computer devices by providing each device's (i) serial number, (ii) manufacturer/make/model, and (iii) storage size (so that an ESI vendor can identify each device); and (2) make those computer devices available for an ESI vendor to create forensically-sound images of their hard drives.

(e)  A pretrial conference may take place on <u>To be decided by the Court</u>.

(f)  Trial date: <u>To be decided by the Court</u> (__**X**__ Jury Trial; _____ Non-Jury Trial)

10. Do you anticipate any special discovery needs (i.e. videotape/telephone depositions, problems with out-of-state witnesses or documents, etc)? Yes __**X**__ No ____. If so, please explain.

Pursuant to Fed. R. Civ. P. 5(b)(2)(E), the parties consent to service of documents by email to lead counsel.

To limit the expense for all parties, the parties agree that depositions of witnesses located outside of New Jersey should be conducted *via* remote means, pursuant to Federal Rule of Civil Procedure 30(b)(4).

Defendant's initial disclosures identified several individuals located in China, which may require a submission of discovery requests to China's Central Authority under the Hauge Convention on the Taking of Evidence Abroad in Civil and Commercial Matters. Plaintiff also anticipates that depositions of these witnesses may require translators, although when Plaintiff requested that Defendant identify which witnesses were not fluent in English, Defendant identified only one witness, called only "Remote technician," as "Chinese-speaking."

11. Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced? Yes ___X___ No _____.

If so, how will electronic discovery or data be disclosed or produced? Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

> **Plaintiff**: On August 5, 2025, the parties discussed an ESI protocol that would enable the parties to create and examine forensically-sound images of relevant computer devices, subject to an appropriate claw-back provision for privileged information. However, on August 8, 2025, Defendant confirmed that he works for Meta—after denying this in his Answer—and stated that his "work computer would be considered off limits," and on August 12, 2025, Defendant submitted a new (and argumentative) L. Civ. R. 26.1(d) ESI notice that appears to contradict most of what counsel discussed during the August 5, 2025 telephone conference. It is unclear if this disparity is the result of Defendant using AI to generate the August 12, 2025 L. Civ. R. 26.1(d) notice.

> As of the date of this report, it appears likely that the parties will need to meet-and-confer further on the issue of ESI discovery. Plaintiff notes that the proposed dates set forth in Paragraph 9(a) were agreed to with the expectation that discovery would proceed consistent with what was discussed at the parties' August 5, 2025 conference, which no longer appears to be Defendant's intention.

> **Defendant**: Defendant acknowledges the August 5, 2025 preliminary ESI discussions but disputes Plaintiff's characterizations of subsequent events. No final agreement was reached during that exploratory conference. Following the discussion, Defendant's counsel conducted thorough client consultations to assess the feasibility and appropriateness of the preliminary framework. The August 12, 2025 ESI Notice was prepared through careful legal analysis after these consultations, not through artificial intelligence as inappropriately suggested by Plaintiff. Defendant categorically rejects this baseless allegation.

> Through attorney and client consultation, it became clear that certain aspects of the August 5, 2025, discussion constituted overreach requiring production of highly personal information without adequate justification, demanding technical documentation beyond Defendant's capabilities as a non-network administrator, and potentially compromising Defendant's privacy and cybersecurity. Defendant's clarification regarding Meta employment was made in good faith and transparency. His work computer contains proprietary Meta information subject to corporate policies and confidentiality agreements, making access inappropriate without proper justification.

> Defendant's ESI notice establishes reasonable parameters consistent with Fed. R. Civ. P. 26(b)(1), proposing that Plaintiff first provide adequate packet level evidence before demanding extensive device level production from Defendant. The notice identifies accessible custodians and sources, good faith preservation efforts including Verizon billing statements and router configurations, and objects to

premature disclosure of sensitive network topology and device identifiers that could create cybersecurity risks without corresponding evidentiary value.

Defendant remains willing to engage in good faith meet-and-confer discussions but maintains that any ESI protocol must respect proportionality requirements, protect legitimate privacy interests, and require Plaintiff to substantiate its claims before demanding extensive technical production from Defendant. Any cost-sharing agreement must account for the parties' relative resources and the requesting party's burden. Defendant's positions reflect careful legal analysis following proper client consultation, not inconsistency or AI assistance as suggested by Plaintiff.

12. Do you anticipate entry of a Discovery Confidentiality Order? *See* L. Civ. R. 5.3(b) and Appendix S.

    The parties are discussing the entry of a Discovery Confidentiality Order, with modifications, and anticipate that one may be submitted for the Court's approval before the Rule 16 Conference.

13. Do you anticipate any discovery problem(s) not listed above? Describe. Yes _____ No ____**X**____ .

14. State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise). If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

    The parties agree this matter may be appropriate for mediation, pursuant to L. Civ. R. 301.1, after completion of fact discovery.

15. Is this case appropriate for bifurcation? Yes _____ No _____X_____

16. An interim status/settlement conference (with clients in attendance) should be held in

    Thirty days after the completion of Discovery.

17. We **do not** consent to the trial being conducted by a Magistrate Judge.

18. Identify any other issues to address at the Rule 16 Scheduling Conference.

    Plaintiff respectfully suggests that the Court consider entering an Order requiring that parties using AI to draft pleadings, motions, discovery responses, and other documents must (1) disclose the program used, and (2) certify that each and every

citation and quotation has been verified as accurate. *Cf.* Standing Order re: Artificial Intelligence In Cases Assigned to Judge Baylson (E.D. Pa. June 6, 2023).

_____/s/ John C. Atkin_____
John C. Atkin, Esq.
Attorney for Plaintiff / August 14, 2025

_____/s/  Kattina V. Barsik_____
Kattina V. Barsik, Esq.
Attorney for Defendant / August 14, 2025